UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

"IN ADMIRALTY"

CASE NO:



MS "ADELE" SCHIFFFAHRTSGESELLSCHAFT
mbH & Co. KG, a Foreign Corporation,

     Plaintiff,

v.

WONDERLAND INTERNATIONAL CORP.,
a Foreign Corporation, *in personam*,

     Defendant.

_____/

## VERIFIED COMPLAINT

     COMES NOW the Plaintiff, MS "ADELE" SCHIFFFAHRTSGESELLSCHAFT mbH & Co. KG ("ADELE" or "PLANTIFF"), by and through undersigned counsel, and hereby files this its Verified Complaint against Defendant WONDERLAND INTERNATIONAL CORP. ("WONDERLAND" or "DEFENDANT"), *in personam*, and alleges as follows:

## NATURE OF THE ACTION

     1.    PLAINTIFF, ADELE, brings this action against Defendant, WONDERLAND, for breach of contract arising out of the failed performance by Defendant of its obligations under a Memorandum of Agreement ("Agreement") dated July 1, 2009, attached hereto as Exhibit "A".

     2.    DEFENDANT has wrongfully refused to honor its duty to purchase the Antigua and Barbuda flagged cargo vessel, the M/V BRINGER AMAZON, currently named the M/V

KALEBAH, Official Number 3038, IMO No. 8913710 ("Vessel"). The Vessel's Transcript of Registry is attached hereto as Exhibit "B".

3.     PLAINTIFF also brings this action against DEFENDANT for fraud and tortious interference with business relationship for its actions associated with DEFENDANT's procuring the Vessel at a foreclosure sale for approximately $1.4 million less than the price it was obligated to pay PLAINTIFF for the Vessel pursuant to the Agreement, after defaulting on its obligations under the Agreement.

4.     PLAINTIFF also brings this cause of action seeking pre-judgment attachment pursuant to the Convention on Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C.S. §§201 et seq., which also provides this Court with subject matter jurisdiction over this cause of action, as is more fully set forth below.

5.     As is more fully set forth below, this cause of action is brought pursuant to this Court's admiralty jurisdiction as well as its federal question jurisdiction.

6.     Because PLAINTIFF and its undersigned counsel hereby certify that the DEFENDANT cannot be found within the Southern District of Florida pursuant to Rule B(1)(a) of the Supplemental Rules for Admiralty and Maritime Procedure, and because, upon information and belief, the Vessel is expected to arrive at the Port of Miami within the Southern District of Florida on Sunday, March 28, 2010, PLAINTIFF seeks maritime attachment of the M/V KALEBAH, including her cargo, engines, tackle, appurtenances, spares and equipment appertaining thereto, whether onboard or not.

7.     Furthermore, because PLANITIFF and its undersigned counsel hereby certify that exigent circumstances exist which make court review impracticable within the meaning of Rule B(1)(c), in that the Vessel is expected to arrive at the Port of Miami as set forth above at 6:00 a.m. EST on Sunday, March 28, 2010, and scheduled to depart that same day at 6:00 p.m. EST, the PLAINTIFF herein requests that the Clerk of Court or, in the alternative, the Court, for immediate issuance of the Summons and Warrant for Process of Attachment in accordance with Rule B(1)(c), as is more fully set forth below.

## JURISDICTION AND VENUE

8.     This is an action brought against DEFENDANT for breach of contract, fraud, civil conspiracy, tortious interference with business relationship and pursuant to English law and the General Maritime Law and thus is within this Court's jurisdiction pursuant to 28 U.S.C. §1333, as PLAINTIFF has alleged facts affecting a vessel in navigation and which meet the situs and nexus tests for maritime jurisdiction.

9.     This is also an action brought against DEFENDANT pursuant to the Convention on Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C.S. §§201 et seq. and thus is within this Court's jurisdiction pursuant to 28 U.S.C. §1331.

10.     At all times material hereto, PLAINTIFF was a foreign corporation, organized and existing under the laws of Federal Republic of Germany, with its principal place of business located in Groβ Hove 17, 21635, Jork, Germany.

3

11.     At all times material hereto, DEFENDANT was a foreign corporation, organized and existing under the laws of the Republic of Panama, with its principal place of business at Calle 51, Este Y Manuel Icaza, Edificio Proconsa, Piso 11, Panama, Republica de Panama.

12.     DEFENDANT is a foreign corporation with no registered agent in Florida which, upon information and belief, cannot be found in Florida.

13.     As such, PLAINTIFF herein seeks attachment of DEFENDANT's property, the Antigua and Barbuda flagged cargo vessel, the M/V KALEBAH, Official Number 3038 ("Vessel"), pursuant to Rule B(1) of the Supplemental Rules for Admiralty or Maritime Claims.

14.     As set forth above, the Vessel will be within the jurisdiction of this Court at the Port of Miami on Sunday, March 28, 2010, as set forth above, at 5:00 a.m. EST and scheduled to depart that same day at 6:00 p.m. EST.

15.     Venue is thus proper in this Court pursuant to 28 U.S.C.S. §1391(b)(2), as a substantial part of the property that is subject to the action is or will be situated within this Court's jurisdiction during the pendency of this action, and 28 U.S.C.S. §1392(d), because an alien may be sued in any district.

## FACTS COMMON TO ALL COUNTS

16.     At all times material hereto, the M/V KALEBAH was located on navigable waters.

17.     On July 1, 2009, PLAINTIFF and DEFENDANT entered into a Memorandum of Agreement whereby PLAINTIFF agreed to sell and DEFENDANT agreed to purchase the cargo vessel, the M/V BRINGER AMAZON (now named the M/V KALEBAH).  See Exhibit "A".

18.     The principal terms of the Agreement are set forth below.

19.     The purchase price for the Vessel is USD 5,000,000.00.  See Exhibit "A".

20.     Clause 2 requires that DEFENDANT Buyer was required to pay USD 500,000.00 as security for fulfillment of its obligations under the Agreement.  See Exhibit "A".

21.     The foregoing deposit was placed with Deutsche Schiffsbank in Hamburg, Germany, held by PLAINTIFF and DEFENDANT in a joint account, to be released in accordance with joint written instructions of PLAINTIFF and DEFENDANT.

22.     Clause 3 provides that the Purchase Price shall be paid to PLAINTIFF Seller upon delivery of the Vessel to DEFENDANT Buyer, but not later than three (3) banking days after the Vessel is physically ready for delivery.  See Exhibit "A".

23.     Clause 8 of the Agreement provides that the closing shall take place in Hamburg, Germany.  See Exhibit "A".

24.     The   Agreement   also   provides   that   PLAINTIFF   Seller   shall   provide DEFENDANT Buyer is certain documents associated with the closing and delivery.  See Exhibit "A".

25.     Clause 13 provides as follows:   "Should the Purchase Price not be paid in accordance with Clause 3 and Clause 18, the Sellers have the right to cancel the agreement, in which case the deposit together with interest earned shall be released to the Sellers.   If the deposit does not cover their loss, the Sellers shall be entitled to claim further compensation for their   losses   and   for   all   expenses   incurred   together   with   interest."

26.     Clause 18 provides that DEFENDANT Buyer is to deposit the balance of the

5

purchase money plus payment for the Vessel's bunkers in separate installments into the DEFENDANT Buyer's account at Deutsche Schiffsbank by July 27, 2009 at the latest.

27.     DEFENDANT did deposit the USD 500,000.00 as security pursuant to the Agreement.

28.     Thereafter, PLAINTIFF provided DEFENDANT with all delivery documents required by the Agreement, which DEFENDANT accepted, signifying acceptance of delivery of the Vessel.

29.     However, DEFENDANT failed to remit the balance of the Purchase Price into their account at Deutsche Schiffsbank.

30.     As such, DEFENDANT defaulted on its duties under the Agreement as contemplated by Clause 13 of the Agreement, such that PLAINTIFF is entitled to the deposit funds.

31.     Nevertheless, DEFENDANT has refused to authorize release of the funds to the PLAINTIFF, which is necessary due to the fact that the funds are held in a joint account.

32.     Pursuant to Clause 13 of the Agreement, PLAINTIFF is also entitled to recovery of damages occasioned by DEFENDANT's default, in addition to being entitled to retain the deposit.

33.     At the time the Agreement was entered into, the Vessel was under arrest by Deutsche Shiffsbank, to secure foreclosure on a mortgage it held on the Vessel.

34.     It was in the contemplation of the Parties and Deutsche Shiffsbank that, as part of the final closing procedure on the Vessel and payment by DEFENDANT of the Purchase Price, the arrest of the Vessel was to be vacated and the foreclosure action dismissed.

35.     Deutsche Schiffsbank had advised both PLAINTIFF and DEFENDANT of its consent to the foregoing procedure.

36.     After DEFENDANT defaulted on its payment obligations under the Agreement, PLAINTIFF could no longer afford to fund the maintenance of the Vessel, nor could it satisfy the mortgage held by Deutsche Shiffsbank.

37.     As a result of the foregoing, PLAINTIFF was forced to initiate bankruptcy proceedings under German law.

38.     Moreover, the arrest was not lifted and Deutsche Shiffsbank thereafter caused the Vessel to be moved to the Commonwealth of the Bahamas to be sold at a marshal's sale.

39.     Shortly thereafter, on November 6, 2009, DEFENDANT purchased the same Vessel in a marshal's sale held in the Commonwealth of the Bahamas for USD 3,650,000.00, or USD 1,350,000.00 less than the price it was required to pay for the Vessel pursuant to the Agreement.  See Bill of Sale attached hereto as Exhibit "C".

40.     The Vessel was sold at the marshal's sale as a result of Deutsche Shiffsbank's foreclosure on its mortgage on the Vessel.

41.     Thereafter, DEFENDANT registered the Vessel with Antigua and Barbuda W.I. as the M/V KALEBAH.  See Exhibit "B".

42.     By reason of the foregoing actions, in addition to being entitled to release of the USD 500,000.00 security deposit, PLAINTIFF has been damaged in the amount of USD 1,350,000.00 (the difference between the purchase price of the Vessel and the price received at auction).

43.     PLAINTIFF has also been damaged by the fact that DEFENDANT failed to take possession of the Vessel, causing PLAINTIFF to incur additional expenses in an attempt to maintain the Vessel.

44.     PLAINTIFF has also been damaged by the expenses associated with the fact that DEFENDANT delayed the proceedings regarding the public auction.

45.     PLAINTIFF has also been damaged by the fact that it was forced to bear the costs and fees associated with the public auction.

46.     PLAINTIFF has further been damaged in the amount of the fees and costs associated with the insolvency proceeding it was forced to undertake.

47.     Finally, PLAINTIFF has been damaged in that it has been required to employ undersigned counsel in the prosecution of this action and to incur undersigned's fees and costs as well as the fees and costs associated with the attachment of the Vessel.

48.     All conditions precedent to the filing of this action have been complied with or waived.

## COUNT I:  BREACH OF CONTRACT

49.     PLAINTIFF re-alleges and re-avers Paragraphs 1 through 48 of the Complaint as if fully set forth herein.

50.     PLAINTIFF and DEFENDANT entered into a valid and enforceable agreement for the purchase and sale of the Vessel, as set forth above, which is attached hereto as Exhibit "A".

51.     PLAINTIFF performed all of its obligations under the Agreement.

52.     DEFENDANT, however, failed to perform its obligations under the Agreement by failing to pay the remainder of the Purchase Price as required by the Agreement.

53.     The breach set forth in Paragraph 52 constitutes an event of default under the Agreement, entitling PLAINTIFF to the deposit funds.

54.     However, DEFENDANT also breached its obligations under the Agreement by failing to authorize release of the deposit funds to PLAINTIFF, as set forth above.

55.     PLAINTIFF has been damaged by DEFENDANT's breach of the Agreement as set forth in Paragraphs 42 through 47 above.

## COUNT II:  FRAUD

56.     PLAINTIFF re-alleges and re-avers Paragraphs 1 through 48 of the Complaint as if fully set forth herein.

57.     DEFENDANT made a false statement regarding a material fact when it stated that it would pay the Purchase Price of the Vessel.

9

58.    DEFENDANT knew or should have known this representation was false when it was made.

59.    DEFENDANT intended that the representation induce PLAINTIFF to act on it.

60.    PLAINTIFF justifiably relied on DEFENDANT's representation by foregoing the pursuit of other purchasers for the Vessel and by delivering the Vessel to DEFENDANT in accordance with the Agreement.

61.    PLAINTIFF has been damaged as a result of its justifiable reliance on DEFENDANT's representation as set forth in Paragraphs 42 through 47 above.

## COUNT III:  TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

62.    PLAINTIFF re-alleges and re-avers Paragraphs 1 through 48 of the Complaint as if fully set forth herein.

63.    PLAINTIFF had a business relationship with Deutsche Schiffsbank as set forth above and related to the mortgage Deutsche Schiffsbank held on the Vessel.

64.    DEFENDANT had knowledge of that PLAINTIFF's relationship with Deutsche Schiffsbank as related to the mortgage on the Vessel.

65.    DEFENDANT intentionally and unjustifiably interfered with PLAINTIFF's relationship with Deutsche Schiffsbank by (a) refusing to pay the Purchase Price on the Vessel and (b) colluding with Deutsche Schiffsbank to obtain the Vessel at a price lower than the Purchase Price at a marshal's sale, as set forth above.

66.     PLAINTIFF has been damaged as a result of DEFENDANT's actions set forth herein as set forth in Paragraphs 42 through 47 above.

## COUNT IV:  CONVENTION ON RECOGNITION AND ENFORCEMENT OF FOREIGN ARBITRAL AWARDS

67.     PLAINTIFF re-alleges and re-avers Paragraphs 1 through 48 of the Complaint as if fully set forth herein.

69.     Clause 16 of the Agreement provides that "any dispute arising out of this Agreement shall be referred to arbitration in London in accordance with the Arbitration Acts of 1950 and 1979." See Exhibit "A".

70.     In accordance with the Agreement, PLAINTIFF commenced arbitration proceedings against DEFENDANT in August of 2009, regarding the dispute arising out of the same operative facts as this Complaint which are more fully set forth above and seeking the same damages as set forth herein.

71.     However, to date, DEFENDANT has refused to arbitrate the issue.

72.     Pursuant to the Convention on Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C.S. §§201 et seq., PLAINTIFF herein requests this Court to compel arbitration in accordance with the Agreement.

74.     Moreover, PLAINTIFF herein requests this Court to attach DEFENDANT's Vessel as security for any award rendered pursuant to the arbitration.

75.     PLAINTIFF will agree to stay prosecution of its causes of action set forth in Counts I, II and III of the instant Complaint once the arbitration commences, pending outcome of arbitration.

## **ENTITLEMENT TO RELIEF PURSUANT TO RULE B**

76.     Because PLAINTIFF and its undersigned counsel hereby certify that the DEFENDANT cannot be found within the Southern District of Florida pursuant to Rule B(1)(a) of the Supplemental Rules for Admiralty and Maritime Procedure, and because, upon information and belief, the Vessel is expected to arrive at the Port of Miami within the Southern District of Florida on Sunday, March 28, 2010, PLAINTIFF seeks maritime attachment of the M/V KALEBAH, including her cargo, engines, tackle, appurtenances, spares and equipment appertaining thereto, whether onboard or not.   The Affidavit of PLAINTIFF's Counsel as required by Rule B(1)(b) is attached hereto as Exhibit "D".

77.     Furthermore, because PLANITIFF and its undersigned counsel hereby certify that exigent circumstances exist which make court review impracticable within the meaning of Rule B(1)(c), in that the Vessel is expected to arrive at the Port of Miami as set forth above at 6:00 a.m. EST on Sunday, March 28, 2010, and scheduled to depart that same day at 6:00 p.m. EST that same day, the PLAINTIFF herein requests that the Clerk of Court or, in the alternative, the Court for immediate issuance the Summons and Warrant for Process of Attachment in accordance with Rule B(1)(c). This issue is also set forth in PLAINTIFF's Emergency Motion for the Clerk of Court to Issue Warrant of Arrest or for an Order of the Court Directing Clerk of Court to Issue Warrant of Arrest.

78.     Furthermore, PLAINTIFF seeks a post-seizure hearing as soon as practicable after the filing of this Complaint, in accordance with Rule E(4)(f), to avoid the incurrence of unnecessary costs and fees associated with the arrest of the Vessel. This issue is also set forth in PLAINTIFF's Emergency Motion for the Clerk of Court to Issue Warrant of Arrest or for an Order of the Court Directing Clerk of Court to Issue Warrant of Arrest.

WHEREFORE, Plaintiff prays that after due proceedings are had:

a.  That process, in due form under Rule B and according to the rules and practices of this Court, be issued against the Vessel, authorizing the attachment, garnishment, and seizure of said Vessel.

b.  That all persons claiming any right, title, and interest in said vessel be summoned to appear and answer under oath, all in the singular, the matters aforesaid and that said vessel be condemned and sold to pay the demands as aforesaid, with costs, attorneys' fees, and interest;

c.  That judgment be entered in favor of Plaintiff, and against Defendant and Defendant's Vessel, *in rem*, in the amount of USD 1,850,000.00, plus interest, attorneys' fees and costs, together with all such losses permitted by law;

d.  For an order compelling DEFENDANT to participate in Arbitration; and

e.  For any other relief which justice requires or may be deemed appropriate by this Court.

Dated:  March 26, 2010                                        Respectfully submitted,

**MOORE & COMPANY, P.A.**

Attorneys for Plaintiffs
355 Alhambra Circle, Suite 1100

Coral Gables, Florida 33134
Tel:  (786)221-0600
Fax: (786)221-0601
Email:  Michael@moore-and-co.net
Email:  aferry@moore-and-co.net

MICHAEL T. MOORE, ESQ.
Fla. Bar No. 207845
AMBER E. FERRY, ESQ.
Fla. Bar No. 0014299

14

## VERIFICATION

Amber E. Ferry, Esq., being duly sworn, deposes and says:

1. I am the attorney for the Plaintiff, and this AFFIDAVIT is made in that capacity.

2. I have discussed the foregoing Verified Complaint with my client who is only available by telephone and he has confirmed that the contents and allegations of the Verified Complaint are true, except as to those matters therein stated upon information and belief.

3. In view of exigent circumstances I make this Verification because my client is unable to execute the verification verifying the matters stated in the Verified Complaint before the security may leave the jurisdiction.

4. The sources of my information and the grounds of my belief as to all matters stated in the Verified Complaint are based on the advice of my client.

Amber E. Ferry, Esquire

STATE OF FLORIDA        )

                        )ss.

COUNTY OF MIAMI-DADE  )

The foregoing instrument was acknowledged before me this 26th day of March, 2010, by Amber E. Ferry, who is personally known to me and who did take an oath.

15

Notary Public, State of Florida

Commission No.: 683386

Notary Seal:



My commission expires:

16

# EXHIBIT "A"

# MEMORANDUM OF AGREEMENT

Dated: 1st July 2009

Norwegian Shipbrokers' Association's Memorandum of Agreement for sale and purchase of ships. Adopted by The Baltic and International Maritime Council (BIMCO) in 1956.
Code name:
**SALEFORM 1993**
Revised 1966, 1983 and 1986/87.

MS "Adele" Schifffahrtsgesellschaft mbH & Co. KG hereinafter called the Sellers, have agreed to    1
sell, and Wonderland International Corp., Calle 51, Este y Manuel Maria Icaza, Edificio Proconsa,
Piso 11, Panama, Republica de Panama
hereinafter called the Buyers, have agreed to buy    2

Name: Bringer Amazon, ex Panabo    3
Classification Society/Class: GL    4

| Built: 1993 | By: Stocznia Polnocna, Gdansk | 5 |
| Flag: Antigua & Barbuda | Place of Registration: underlying Register: Hamburg, Germany. Bareboat Register: St.John's, Antigua & Barbuda | 6 |
| Call Sign: V2AE8 | Grt/Nrt: 5999/3075 | 7 |

Register Number: underlying register: 20561, bareboat Register: 2409, IMO number: 8913710    8

hereinafter called the Vessel, on the following terms and conditions:    9

Definitions    10

"Banking days" are days on which banks are open both in the country of the currency    11
stipulated for the Purchase Price in Clause 1 and in the place of closing stipulated in Clause 8.    12

"In writing" or "written" means a letter handed over from the Sellers to the Buyers or vice versa,    13
a registered letter, telex, telefax or other modern form of written communication.    14

"Classification Society" or "Class" means the Society referred to in line 4.    15

1.    Purchase Price USD 5,0000,000 (Unitedstatesdollarsfivemillion)    16

2.    Deposit    17

As security for the correct fulfilment of this Agreement the Buyers ~~shall pay~~ have paid a    18
deposit of ~~10 %~~ USD 500,000.- ~~(ten per cent) of the Purchase Price within          banking days from the date of this~~    19
~~Agreement.~~ This deposit ~~shall be~~ has been placed with Deutsche Schiffsbank, Hamburg, Germany    20
and held by them in a joint account for the Sellers and the Buyers, to be released in accordance    21
with joint written instructions of the Sellers and the Buyers. Interest, if any, to be credited to the    22
Buyers. Any fee charged for holding the said deposit shall be borne equally by the Sellers and the    23
Buyers.    24

3.    Payment    25

The said Purchase Price shall be paid in full free of bank charges to Deutsche Schiffsbank,    26
Hamburg, Germany
on delivery of the Vessel, but not later than 3 banking days after the Vessel is in every respect    27
physically ready for delivery in accordance with the terms and conditions of this Agreement and    28
Notice of Readiness has been given in accordance with Clause 5.    29

4.    Inspections    30

a)*    The Buyers have inspected and accepted the Vessel's classification records. The Buyers    31
have also inspected the Vessel at/in Port Everglades, Florida, USA on 23rd February 2009,    32
23rd March 2009 and 15th June 2009
and have accepted the Vessel following this inspection and the sale is outright and definite.    33
as is where is

This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document shall be clearly visible, the text of the original, approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

subject only to the terms and conditions of this Agreement.                                    34

b)~~The Buyers shall have the right to inspect the Vessel's classification records and declare~~   35
~~whether same are accepted or not within~~                                                      36
~~The Sellers shall provide for inspection of the Vessel at/in~~                                  37
~~The Buyers shall undertake the inspection without undue delay to the Vessel. Should the~~       38
~~Buyers cause undue delay they shall compensate the Sellers for the losses thereby incurred.~~   39
~~The Buyers shall inspect the Vessel without opening up and without cost to the Sellers~~        40
~~During the inspection, the Vessel's deck and engine log books shall be made available for~~     41
~~examination by the Buyers. If the Vessel is accepted after such inspection, the sale shall~~    42
~~become outright and definite, subject only to the terms and conditions of this Agreement~~      43
~~provided the Sellers receive written notice of acceptance from the Buyers within 72 hours~~     44
~~after completion of such inspection.~~                                                          45
~~Should notice of acceptance of the Vessel's classification records and of the Vessel not be~~   46
~~received by the Sellers as aforesaid, the deposit together with interest earned, shall be~~     47
~~released immediately to the Buyers, whereafter this Agreement shall be null and void.~~         48

*4  a) and  4b)  are alternatives;  delete whichever is not applicable. In the absence of deletions,*  49
*alternative 4a) to apply.*                                                                      50

5.      **Notices, time and place of delivery**                                                  51

a)      The Sellers shall keep the Buyers well informed of the Vessel's itinerary and shall     52
        provide the Buyers with 5,, 3 approximate, and 1 days definite notice of the estimated time of  53
        ~~arrival at the~~                                                                        
        ~~intended place of drydocking/underwater inspection/~~ delivery. When the Vessel is at the place  54
        of  delivery  and  in  every respect physically ready for delivery in accordance with this  55
        Agreement, the Sellers shall give the Buyers a written Notice of Readiness for delivery.  56

b)      The Vessel shall  be  delivered  and  taken  over  safely afloat at a safe and accessible berth or  57
        anchorage at/in Freeport, Bahamas                                                        58
        in the Sellers' option.                                                                  59

        Expected time of delivery: 27th July 2009                                           60

        Date of cancelling (see Clauses 5 c), ~~5 b) (iii)~~ and 14): 27th July 2009        61

c)      If the Sellers anticipate that, notwithstanding the exercise of due diligence by them, the  62
        Vessel will not be ready for delivery by the cancelling date they may notify the Buyers in  63
        writing stating the date when they anticipate that the Vessel will be ready for delivery and  64
        propose a new cancelling date. Upon receipt of such notification the Buyers shall have the  65
        option of either cancelling this Agreement in accordance with Clause 14 within 7 running  66
        days  of  receipt  of  the  notice  or of accepting the new date as the new cancelling date. If the  67
        Buyers  have  not  declared  their  option  within 7 running days of receipt of the Sellers'  68
        notification  or  if  the  Buyers accept the new date, the date proposed in the Sellers' notification  69
        shall  be  deemed  to  be  the new cancelling date and  shall be substituted for the cancelling  70
        date stipulated in line 61.                                                              71

        If this Agreement is maintained with the  new cancelling date all other terms and conditions  72
        hereof including those contained in Clauses  5 a) and 5 c) shall remain unaltered and in full  73
        force and effect. Cancellation or failure to cancel shall be entirely without prejudice to any  74
        claim for damages the Buyers may have under Clause 14 for the Vessel not being ready  75
        by                                                                                       
        the original cancelling date.                                                            76

d)      Should the Vessel become an actual, constructive or compromised total loss before delivery  77
        the deposit together with interest earned shall be released immediately to the Buyers  78
        whereafter this Agreement shall be null and void.                                        79

6.      **Drydocking/Divers Inspection** – No drydocking clause to apply. The Buyers have carried  80
out an underwater inspection on/at 20th April 2009 in Port Everglades.

a)~~The Sellers shall place the Vessel in drydock at the port of delivery for inspection by the~~  81
~~Classification Society of the Vessel's underwater parts below the deepest load line, the~~        82
~~extent of the inspection being in accordance with the Classification Society's rules. If the~~     83
~~rudder, propeller, bottom or other underwater parts below the deepest load line are found~~        84
~~broken, damaged or defective so as to affect the Vessel's class, such defects shall be made~~      85
~~good at the Sellers' expense to the satisfaction of the Classification Society without~~           86

This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the standard printed text of this document, which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

condition/recommendation'.                                                                                      87

b):    (i)     The Vessel is to be delivered without drydocking. However, the Buyers shall          88
have the right at their expense to arrange for an underwater inspection by a diver approved          89
by the Classification Society prior to the delivery of the Vessel. The Sellers shall at their         90
cost make the Vessel available for such inspection. The extent of the inspection and the             91
conditions under which it is performed shall be to the satisfaction of the Classification            92
Society. If the conditions at the port of delivery are unsuitable for such inspection, the           93
Sellers shall make the Vessel available at a suitable alternative place near to the delivery         94
port.                                                                                                95

(ii)   If the rudder, propeller, bottom or other underwater parts below the deepest load line        96
are found broken, damaged or defective so as to affect the Vessel's class, then unless               97
repairs can be carried out afloat to the satisfaction of the Classification Society, the Sellers      98
shall arrange for the Vessel to be drydocked at their expense for inspection by the                  99
Classification Society of the Vessel's underwater parts below the deepest load line, the            100
extent of the inspection being in accordance with the Classification Society's rules. If the        101
rudder, propeller, bottom or other underwater parts below the deepest load line are found           102
broken, damaged or defective so as to affect the Vessel's class, such defects shall be made         103
good by the Sellers at their expense to the satisfaction of the Classification Society              104
without condition/recommendation". In such event the Sellers are to pay also for the cost of        105
the underwater inspection and the Classification Society's attendance.                              106

(iii)  If the Vessel is to be drydocked pursuant to Clause 6 b) (ii) and no suitable dry            107
docking facilities are available at the port of delivery, the Sellers shall take the Vessel         108
to a port where suitable drydocking facilities are available, whether within or outside the         109
delivery range as per Clause 5 b). Once drydocking has taken place the Sellers shall deliver        110
the Vessel at a port within the delivery range as per Clause 5 b) which shall, for the              111
purpose of this Clause, become the new port of delivery. In such event the cancelling date          112
provided for in Clause 5 b)) shall be extended by the additional time required for the             113
drydocking and extra steaming, but limited to a maximum of 14 running days.                        114

c)     If the Vessel is drydocked pursuant to Clause 8 a) or 6 b) above                             115

(i)    the Classification Society may require survey of the tailshaft system, the extent of          116
the survey being to the satisfaction of the Classification surveyor. If such survey is not          117
required by the Classification Society, the Buyers shall have the right to require the tailshaft     118
to be drawn and surveyed by the Classification Society, the extent of the survey being in           119
accordance with the Classification Society's rules for tailshaft survey and consistent with         120
the current stage of the Vessel's survey cycle. The Buyers shall declare whether they              121
require the tailshaft to be drawn and surveyed not later than by the completion of the              122
inspection by the Classification Society. The drawing and refitting of the tailshaft shall be        123
arranged by the Sellers. Should any parts of the tailshaft system be condemned or found            124
defective so as to affect the Vessel's class, those parts shall be renewed or made good at          125
the Sellers' expense to the satisfaction of the Classification Society without              126
condition/recommendation".                                                                          127

(ii)   the expenses relating to the survey of the tailshaft system shall be borne              128
by the Buyers unless the Classification Society requires such survey to be carried out, in          129
which case the Sellers shall pay these expenses. The Sellers shall also pay the expenses            130
if the Buyers require the survey and parts of the system are condemned or found defective           131
or broken so as to affect the Vessel's class".                                                     132

(iii)  the expenses in connection with putting the Vessel in and taking her out of                 133
drydock, including the drydock dues and the Classification Society's fees shall be paid by           134
the Sellers if the Classification Society issues any condition/recommendation" as a result          135
of the survey or if it requires survey of the tailshaft system. In all other cases the Buyers        136
shall pay the aforesaid expenses, dues and fees.                                                    137

(iv)   the Buyers' representative shall have the right to be present in the drydock, but            138
without interfering with the work or decisions of the Classification surveyor.                      139

(v)    the Buyers shall have the right to have the underwater parts of the Vessel                  140
cleaned and painted at their risk and expense without interfering with the Sellers' or the          141
Classification surveyor's work, if any, and without affecting the Vessel's timely delivery. If      142
however, the Buyers' work in drydock is still in progress when the Sellers have             143
completed the work which the Sellers are required to do, the additional docking time               144
needed to complete the Buyers' work shall be for the Buyers' risk and expense. In the event         145
that the Buyers' work requires such additional time, the Sellers may upon completion of the         146
Sellers' work tender Notice of Readiness for delivery whilst the Vessel is still in drydock          147
and the Buyers shall be obliged to take delivery in accordance with Clause 7, whether              148

This document is a computer-generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document, which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

the Vessel is in drydock or not and irrespective of Clause 5 b).                                149

Notes, if any, in the surveyor's report which are accepted by the Classification Society        150
without condition/recommendation are not to be taken into account.                              151

6 a) and 6 b) are alternatives; delete whichever is not applicable. In the absence of deletions  152
alternative 6 a) to apply.                                                                       153

*The Vessel was last drydocked in November 2008 in the presence of class. Upon
delivery Sellers shall provide a letter of undertaking stating that Vessel has not touched
bottom since her last drydocking.*

7.      Spares/bunkers, etc.                                                                      154

The Sellers shall deliver the Vessel to the Buyers with everything belonging to her on board and on   155
Shore and on order. All spare parts and spare equipment including spare tail-end shaft(s)         156
and/or spare
propeller(s)/propeller blade(s), if any, belonging to the Vessel at the time of inspection used or   157
unused, whether on board or not shall become the Buyers' property, but spares on order are to    158
be
excluded. Forwarding charges, if any, shall be for the Buyers' account. The Sellers are not required to   159
replace spare parts including spare tail-end shaft(s) and spare propeller(s)/propeller blade(s) which   160
are taken out of spare and used as replacement prior to delivery, but the replaced items shall be the   161
property of the Buyers. The radio installation and navigational equipment shall be included in the sale   162
without extra payment if they are the property of the Sellers. Unused stores and provisions shall be   163
included in the sale and be taken over by the Buyers without extra payment.                        164

The Sellers have the right to take ashore crockery, plates, cutlery, linen and other articles bearing the   165
Sellers' flag or name, provided they replace same with similar unmarked items. Library, forms, etc.,   166
exclusively for use in the Sellers' vessel(s), shall be excluded without compensation. Captain's,   167
Officers' and Crew's personal belongings including the slop chest are to be excluded from the sale,   168
as well as the following additional items (including items on hire): Unitor gas bottles             169

The Buyers shall take over the remaining bunkers and unused lubricating oils in storage tanks and   170
sealed drums, as far as owned by the Sellers, which is included in the sale and pay the current   171
net market price (excluding barging expenses) at the port and date
of delivery of the Vessel. Buyers to pay extra only for bunkers owned by present Charterers,
exact quantities to be measured on board on the date of delivery and to be paid as per           172
vouchers attached to this MoA.
Payment under this Clause shall be made at the same time and place and in the same currency as   173
the Purchase Price.                                                                              174

8.      Documentation                                                                            175

The place of closing: Hamburg, Germany                                                           176

In exchange for payment of the Purchase Price the Sellers shall furnish the Buyers with delivery   177
documents, namely: As per Addendum No.1 to the initial MoA dated 30th March 2009 with logical   178
amendments to be mutually agreed upon.

a)    Legal Bill of Sale in a form recordable in ... (the country in which the Buyers are        179
      to register the Vessel), warranting that the Vessel is free from all encumbrances, mortgages   180
      and maritime liens or any other debts or claims whatsoever, duly notarially attested and   181
      legalized by the consul of such country or other competent authority.                      182

b)    Current Certificate of Ownership issued by the competent authorities of the flag state of   183
      the Vessel.                                                                                184

c)    Confirmation of Class issued within 72 hours prior to delivery.                            185

d)    Current Certificate issued by the competent authorities stating that the Vessel is free from   186
      registered encumbrances.                                                                   187

e)    Certificate of Deletion of the Vessel from the Vessel's registry or other official evidence of   188
      deletion appropriate to the Vessel's registry at the time of delivery, or in the event that the   189
      registry does not, as a matter of practice, issue such documentation immediately, a written   190
      undertaking by the Sellers to effect deletion from the Vessel's registry forthwith and furnish a   191
      Certificate or other official evidence of deletion to the Buyers promptly and latest within 4   192
      (four) weeks after the Purchase Price has been paid and the Vessel has been delivered.     193

f)    Any such additional documents as may reasonably be required by the competent authorities   194
      for the purpose of registering the Vessel, provided the Buyers notify the Sellers of any such   195

This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or addition to this form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

~~documents as soon as possible after the date of this Agreement.~~ 196

~~At the time of delivery the Buyers and Sellers shall sign and deliver to each other a Protocol of~~ 197
~~Delivery and Acceptance confirming the date and time of delivery of the Vessel from the Sellers to the~~ 198
~~Buyers.~~ 199

At the time of delivery the Sellers shall hand to the Buyers the classification certificate(s) as well as all 200
manuals, instruction books, computers including software and passwords
plans etc., which are on board the Vessel/ashore. ISM /ISPS data to be excluded. Other certificates 201
which are on board the Vessel shall also
be handed over to the Buyers unless the Sellers are required to retain same, in which case the 202
Buyers to have the right to take copies. Other technical documentation which may 203
be in the Sellers' possession shall be promptly forwarded to the Buyers at their expense, if they so 204
request. The Sellers may keep the Vessel's log books but the Buyers to have the right to take 205
copies of same. Sellers agree to leave onboard the following: SOPEP, Cargo Securing manual, 206
Ballast Water Manual, Crew training manual, Garbage management manual.

**9.    Encumbrances** – see also clause 20. 207

The Sellers warrant that the Vessel, at the time of delivery, is free from all charters, encumbrances, 208
mortgages and maritime liens or any other debts whatsoever. The Sellers hereby undertake 209
to indemnify the Buyers against all consequences of claims made against the Vessel which have 210
been incurred prior to the time of delivery. 211

**10.    Taxes, etc.** 212



Any taxes, fees and expenses in connection with the purchase and registration under the Buyers' flag 213
shall be for the Buyers' account, whereas similar charges in connection with the closing of the Sellers' 214
register shall be for the Sellers' account. Sellers to confirm that to the best of Sellers knowledge 215
the Vessel is not blacklisted by any nation. Sellers letter indemnifying the Buyers against all
consequences of claims made against the Vessel which have been incurred prior to the time of
delivery

**11.    Condition on delivery** 216

The Vessel with everything belonging to her shall be at the Sellers' risk and expense until she is 217
delivered to the Buyers, but subject to the terms and conditions of this Agreement she shall be 218
delivered strictly 'as is' and taken over as she was at the time of inspection dated 15ᵗʰ June 2009 in 219
Port Everglades, fair wear and tear excepted.
However, the Vessel shall be delivered with her class maintained ~~without condition/recommendation~~ 220
free of average damage affecting the Vessel's class, and with her classification certificates and 221
national certificates, as well as all other certificates the Vessel has on board, ~~had at the time of~~ 222
~~inspection, valid and~~
~~Unextended without condition/recommendation* by Class or the relevant authorities at the time of~~ 223
~~delivery.~~ 224
~~"Inspection" in this Clause 11 shall mean the Buyers' inspection according to Clause 4 a) or 4 b) if~~ 225
~~applicable, or the Buyers' inspection prior to the signing of this Agreement. If the Vessel is taken over~~ 226
~~without inspection, the date of this Agreement shall be the relevant date.~~ 227

~~* Notes, if any, in the surveyor's report which are accepted by the Classification Society~~ 228
~~without condition/recommendation are not to be taken into account.~~ 229

**12.    Name/markings** 230

Upon delivery the Buyers undertake to change the name of the Vessel and alter funnel markings. 231

**13.    Buyers' default** 232

Should the deposit not be paid in accordance with Clause 2, the Sellers have the right to cancel this 233
Agreement, and they shall be entitled to claim compensation for their losses and for all expenses 234
incurred together with interest. 235
Should the Purchase Price not be paid in accordance with Clause 3 and Clause 18, the Sellers 236
have the right to
cancel the Agreement, in which case the deposit together with interest earned shall be released to the 237
Sellers. If the deposit does not cover their loss, the Sellers shall be entitled to claim further 238

This document is a computer generated SALE FORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

compensation for their losses and for all expenses incurred together with interest.                                           239

### 14.    Sellers' default                                                                                                    240

Should the Sellers fail to give Notice of Readiness in accordance with Clause 5 a) or fail to be ready    241
to validly complete a legal transfer by the date stipulated in line 61 the Buyers shall have    242
the option of cancelling this Agreement provided always that the Sellers shall be granted a    243
maximum of 3 banking days after Notice of Readiness has been given to make arrangements    244
for the documentation set out in Clause 8. If after Notice of Readiness has been given but before    245
the Buyers have taken delivery, the Vessel ceases to be physically ready for delivery and is not    246
made physically ready again in every respect by the date stipulated in line 61 and new Notice of    247
Readiness given, the Buyers shall retain their option to cancel. In the event that the Buyers elect    248
to cancel this Agreement the deposit together with interest earned shall be released to them    249
immediately.    250
Should the Sellers fail to give Notice of Readiness by the date stipulated in line 61 or fail to be ready    251
to validly complete a legal transfer as aforesaid they shall make due compensation to the Buyers for    252
their loss and for all expenses together with interest if their failure is due to proven    253
negligence and whether or not the Buyers cancel this Agreement.    254

### 15.    Buyers' representatives                                                                                              255

After this Agreement has been signed by both parties and the deposit has been lodged, the Buyers    256
have the right to placed two representatives on board the Vessel at their sole risk and expense.    257
upon    
arrival at         on or about    
These representatives are on board for the purpose of familiarisation and in the capacity of    258
observers only, and they shall not interfere in any respect with the operation of the Vessel. The    259
Buyers' representatives shall sign the Sellers' letter of indemnity prior to their embarkation.    260
    261

### 16.    Arbitration                                                                                                         262

a)    This Agreement shall be governed by and construed in accordance with English law and    263
any dispute arising out of this Agreement shall be referred to arbitration in London in    264
accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or    265
re-enactment thereof for the time being in force, one arbitrator being appointed by each    266
party. On the receipt by one party of the nomination in writing of the other party's arbitrator,    267
that party shall appoint their arbitrator within fourteen days, failing which the decision of the    268
single arbitrator appointed shall apply. If two arbitrators properly appointed shall not agree    269
they shall appoint an umpire whose decision shall be final.    270

b)    This Agreement shall be governed by and construed in accordance with Title 9 of the    271
United States Code and the Law of the State of New York and should any dispute arise out of    272
this Agreement, the matter in dispute shall be referred to three persons at New York, one to    273
be appointed by each of the parties hereto, and the third by the two so chosen; their    274
decision or that of any two of them shall be final, and for purpose of enforcing any award, this    275
Agreement may be made a rule of the Court. The    276
The proceedings shall be conducted in accordance with the rules of the Society of Maritime    277
Arbitrators, Inc., New York.    278

c)    Any dispute arising out of this Agreement shall be referred to arbitration at    279
    subject to the procedures applicable there.    280
The law of    shall govern this Agreement.    281

16 a), 16 b) and 16 c) are alternatives; delete whichever is not applicable. In the absence of    282
deletions, alternative 16 a) to apply.    283

17. Sale to be kept strictly private and confidential by the contractual parties and not to be reported. If
sale to be reported by anyone else, contractual parties have no liability.

18. The balance purchase money plus payment for the Bunkers to be deposited in seperate instalments
to the Buyers account with Deutsche Schiffsbank latest by 27th July 2009. Buyers have to prove that they
have paid the funds as follows: 10th July and 15th July 2009.

This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbroker Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbroker Association assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

19. Letter of Undertaking from the Buyers that the funds as per clause 18. to remain in the Buyers own account til delivery, provided that Sellers comply with the MoA, if not Buyers have the right to withdraw their money from their own account.

20. Confirmation Letter of the previous Charterer, Bringer Lines adressed to the Buyers stating that Bringer Lines and the Sellers have entered into an Agreement regarding the termination of the time charter Agreement dated ____ and that this termination includes a full and final settlement of all outstanding claims that Bringer Lines may have against the Seller and the Vessel, in rem, and vice versa.

21. The Sellers warrant the Vessel's P + I and pollution insurance have been, and will be, in full force and effect up to the time of delivery.

22. Sellers warrant and agree to pay all expenses incurred by the Vessel in the Bahamas up to the time of delivery including, but not limited to, legal fees and expenses of the Admiralty Marshal.

23. If it is proven by an Arbitration Panel working under the small claims procedure of the Arbitration Act of 1953 and 1974 as from time to time amended, that Owners don't deliver the ship according to Moa, Sellers release all rights to all joint account funds in Deutsche Schiffsbank to the Buyers.

The Sellers

The Buyers

This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

# EXHIBIT "B"

Form No. 8(R)

# TRANSCRIPT OF REGISTER

| Official Number | Name of Ship | Port of Registry | Call Sign |
|---|---|---|---|
| 3 0 3 8 | KALEBAH | ST. JOHN'S | V 2 Q A 4<br>IMO No:  8913710 |

| Whether a Sailing, Steam or Motor Ship;<br>If Steam or Motor, how propelled | Where Built | Keel Laid | Name and Address of Builders |
|---|---|---|---|
| MOTOR SHIP, SINGLE SCREW | POLAND | 1990 | STOCZNIA POLNOCNA, 80-958<br>GDANSK |

| | | Identification Dimensions | | Metric Units |
|---|---|---|---|---|
| Type of Ship | CARGO SHIP | Length* | Article 2 (8) | 113.360 |
| Number of Decks | ONE | Breadth* | Regulation 2 (3) | 18.600 |
| Stem | RAKED | Moulded depth* | Regulation 2 (2) | 9.200 |
| Stern | TRANSOM | Moulded draught* | Regulation 4 (2) | 7.010 |
| Material used to construct hull | STEEL | Overall length | | 120.940 |
| | | *according to International Convention on<br>Tonnage Measurement of Ships 1969 | | |

## PARTICULARS OF PROPELLING ENGINES as supplied by Builders, Owners or Engine Makers

| No. of sets of Engines | Description of Engines | When Engines made | Name and Address of Engine Makers | Reciprocating Engines | | rated power/ estimated Speed of Ship |
|---|---|---|---|---|---|---|
| | | | | No. of cylinders in each set | Diameter of cylinders | |
| ONE | INTERNAL COMBUSTION | Engines:<br>1991 | ZAKLADY URZADZEN TECHNICZNYCH "ZGODA" | | | |
| | | | | 8 | 400 mm | 5760 kW |
| No. of Shafts | | | | Length of Stroke | | |
| ONE | | | | 560 mm | | — |

## PARTICULARS OF TONNAGE

### The tonnages of this ship in accordance with her Tonnage Certificate are:

GROSS TONNAGE:      ....  5 999  -- Fivethousandandninehundredandninetynine  --

NET TONNAGE:      ....  3 075  -- Threethousandandseventyfive  --

| Name, Residence and Occupation of the Owner |
|---|

WONDERLAND INTERNATIONAL CORPORATION
CALLE 51 ESTE Y MANUEL MARIA ICAZA
EDEFICIO PROCONSA
PISO 11
PANAMA
REPUBLIC OF PANAMA



Dated 18th February, 2010 at 13:05 UTC          Capt J.A. Gillis    **Registrar**

NOTICE – A Certificate of Registry is not a document of Title. It does not necessarily contain notice of all changes of ownership and in no case does it contain an official record of any mortgages affecting the ship. In case of any change of ownership, it is important for the interests of all parties that the change should be registered according to law. Changes of ownership, address or other registered particulars should be notified to the Registrar at the Port of registry. Should the Vessel be lost, sold to Foreigners or broken up, notice thereof, together with the Certificates of Registry, if in existence should immediately be given to the Registrar of Antigua and Barbuda Ships at the Port of Registry under a Penalty of $1,000.00 for default.

## Mortgage Details

TO DATE THE VESSEL "KALEBAH" IS RECORDED IN THE REGISTER BOOK OF ANTIGUA AND BARBUDA.

THERE ARE NO LIENS OR MORTGAGES RECORDED AGAINST THE VESSEL "KALEBAH".



Captain J.A. Gillis
Registrar

Issued on the 18th February, 2010

# EXHIBIT "C"

Commonwealth Of The Bahamas

New Providence

Dated: 24th day of January A.D. 2010

# BILL OF SALE

ALEXIOU, KNOWLES & CO
Chambers
Frederick Street Steps
Nassau, The Bahamas
RJWH/acc - 109198

COMMONWEALTH OF THE BAHAMAS

New Providence

KNOW ALL PERSONS BY THESE PRESENTS THAT I PATRICK A. McNEIL, Admiralty Marshal of the Supreme Court of the Commonwealth of The Bahamas (Admiralty Side), in obedience to and by virtue of a Commission bearing the date the 6th day of November A.D., 2009 and directed and authorized by the said Supreme Court in Admiralty Action No.  COM/Adm/00076 of 2009 that for the sum of Three Million Six Hundred Thousand Five Hundred Dollars (USD $3,600,500.00) in the currency of United States Dollars (the receipt whereof I do hereby acknowledge) do fully and absolutely grant, bargain, sell, assign and set over by these Presents unto **Wonderland International Corp.,** a Corporation duly organized and existing under the laws of the Republic of Panama and their assigns the entirety of the Motor Vessel **"BRINGER AMAZON"** having a Gross Tonnage of 5,999 tons and bearing the Official Number 20561 together with being registered as No. 8913710 at the Port of Hamburg, the Federal Republic of Germany, now lying at the Port of Freeport, Grand Bahama in the said Commonwealth of The Bahamas TO HAVE AND TO HOLD  the said Motor Vessel "BRINGER AMAZON" and her appurtenances thereunto belonging unto the said Wonderland International Corp. and their assigns to their own use and uses and as their own proper goods and chattels from henceforth forever and I the said **PATRICK A. McNEIL,** Admiralty Marshal of the said Supreme Court do hereby covenant, promise and agree with the said  Wonderland International Corp., and their assigns that at the time of the sealing and delivery of these Presents I have in and by the Commission and authority aforesaid the right, power and authority to grant, bargain, sell assign and set over the said Motor Vessel "BRINGER AMAZON" unto the said Wonderland International Corp., and their assigns in manner and form aforesaid and I HEREBY CERTIFY that the effect under the Laws of the said Commonwealth of the Bahamas of this Judicial Sale is that the said Motor Vessel "BRINGER AMAZON" and her appurtenances are free and clear of all claims, liens, customs, duties, encumbrances, cause of

Richard J.W. Horton
Attorney-at-Law
ALEXIOU, KNOWLES & CO
Chambers
Nassau, The Bahamas

action and libels, every part thereof now is so from henceforth forever shall remain and continue unto the said Wonderland International Corp. and their assigns.

IN WITNESS WHEREOF I **Patrick McNeil**, Admiralty Marshal of the Commonwealth of The Bahamas have hereunto subscribed my name and affixed my seal this 29 day of January A.D., 2010.

....................................................
**ADMIRALTY MARSHAL**

Signed, Sealed and Delivered by the said **PATRICK A. McNEIL** in the presence of:-

....................................................

**COMMONWEALTH OF THE BAHAMAS**

**New Providence**

I, Nicaya Neilly of the Western District of the Island of New Providence one of the Islands of the Commonwealth of The Bahamas MAKE OATH AND SAY that I was present and saw **PATRICK A. McNEIL**, Admiralty Marshal of the Supreme Court of the Commonwealth of The Bahamas (Admiralty Side) aforesaid Sign Seal and as and for his act and deed Execute and Deliver the annexed **BILL OF SALE** dated the 29th day of January A.D. 2010 for the purposes therein mentioned; and that I subscribed my name as the witness to the due execution thereof.

SWORN at Nassau, The )

Bahamas this 29th day )

of January A.D. 2010 )   ...............................................................

Before me,

Dep. REGISTRAR

# EXHIBIT "D"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

"IN ADMIRALTY"

CASE NO:

MS "ADELE" SCHIFFFAHRTSGESELLSCHAFT
mbH & Co. KG, a Foreign Corporation,

      Plaintiff,

v.

WONDERLAND INTERNATIONAL CORP.,
a Foreign Corporation, *in personam*,

      Defendant.

_____/

### AFFIDAVIT OF AMBER E. FERRY, ESQ.

State of Florida           )

                          )ss.

County of Miami-Dade    )

      I, Amber E. Ferry, Esq., first being duly sworn, depose and say as follows:

      1.      I am over the age of eighteen (18) and otherwise confident to make this Affidavit.

      2.      I have personal knowledge regarding the subject matter of this Affidavit.

      3.      I make this Affidavit in support of the Plaintiff's, MS "ADELE" SCHIFFFAHRTSGESELLSCHAFT mbH & Co. KG Verified Complaint and Emergency

1

Motion for the Clerk of Court to Issue Warrant of Arrest or for an Order of the Court Directing Clerk of Court to Issue Warrant of Arrest filed therewith.

4.     Upon   information   and   belief,   the   Defendant,   WONDERLAND INTERNATIONAL CORP., owner of the Vessel the M/V KABELAH (hereinafter referred to as "the VESSEL"), cannot be found within the jurisdiction of any federal court in Florida for the purposes of service of process of the instant action.

5.     Specifically, I have searched the corporate filings with the Florida Department of State Division of Corporations and can find no record of Defendant being incorporated in Florida, having an office or any real property in Florida, being licensed to do business in Florida, nor having a registered agent for service of process in Florida.

6.     For the foregoing reasons, PLAINTIFF seeks an attachment of the VESSEL pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims.

7.     Upon information and belief, the VESSEL PLAINTIFF seeks to attach currently is located within this Court's jurisdiction at the Port of Miami during the pendency of this action on Sunday, March 28, 2010, between the hours of 6:00 a.m. and 6:00 p.m., after which time it will be removed from the jurisdiction of the United States Courts.

NAME:  Amber E. Ferry, Esq.

2

The foregoing instrument was acknowledged before me on this 26th day of March, 2010, by Amber E. Ferry, who is personally known to me, and who deposes and says the foregoing is true and correct to the best of his knowledge and who took an oath affirming the foregoing.

SWORN AND SUBSCRIBED before me this 26th day of March , 2010.


_____
Notary Public

Name: Loisset Dulzaides-Perez

Commission No.: 683386

Notary Seal:

LOISSET D. PEREZ
Notary Public - State of Florida
My Commission Expires Jun 7, 2011
Commission # DD 683386

My commission expires:

3